

**MICHAEL A. CARDOZO**
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET, RM 2-172
NEW YORK, NY 10007

**JAMES M. LEMONEDES**
*Assistant Corporation Counsel*
Phone: (212) 788-0881
Fax: (212) 788-0877
e-mail: jlemoned@law.nyc.gov

May 21, 2007

Hon. I. Leo Glasser
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201
By ECF filing and first class mail[1]

    Re: Weintraub v. New York City Board Education, et al., 00 CV 4384 (ILG)

Dear Judge Glasser:

    I am an Assistant Corporation Counsel in the Office of Michael A. Cardozo, Corporation Counsel of the City of New York, and the lead trial counsel in the above referenced action. I write in reply to plaintiff's opposition of defendants' recent *in limine* motions, including the motion to dismiss plaintiff's claim of First Amendment retaliation in light of the recent Supreme Court decision of Garcetti v. Ceballos, 547 U.S. ___, 126 S. Ct. 1951 (2006).

**1)**     **Plaintiff Was Not Speaking As A Citizen For First Amendment Purposes And His Grievance Was Not Protected Speech**

    This motion specifically addresses the extra layer of review that the Supreme Court has clearly articulated when considering whether "the employee spoke as a citizen on a matter of public concern." Garcetti v. Ceballos, 547 U.S. ___, 126 S. Ct. 1951, 1958 (2006)(quoting, Pickering v Board of Educ., 391 U.S. 563, 568 (1968)). Defendants have previously moved for summary judgment on the grounds that plaintiff's complaints concerning student discipline in his own classroom would not constitute an issue of public interest, as such complaints concerned only issues that pertained to Weintraub individually. This Court has already considered and rejected this motion. See Weintraub v. BOE, 423 F. Supp. 2d 38, 50-52 (E.D.N.Y. 2006)(denying Defendants' Summary Judgment Motion pp. 7-9 (citing, Garcia v S.U.N.Y. Health Sciences Center, 280 F3d 98, 106 (2d Cir 2001); Ezekow v. New York Health

---

[1]   The first class mailing of this letter is submitted as the courtesy copy to the Court, and is accompanied by courtesy copies of the defendants' request to charge the jury and proposed jury *voir dire*.

and Hospitals Corp., 940 F2d 775, 781 (2d Cir 1991))).[2]  The <u>Garcetti</u> decision, however, now establishes that there are two prongs to this inquiry: first whether the speech in question is made by an employee speaking in his capacity as a citizen for First Amendment purposes, or whether it is made pursuant to the employee's official duties, and second whether the speech at issue was on a subject of public concern, rather than of individual interest.  The Supreme Court has now made clear that: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Garcetti</u>, <u>supra</u>, 126 S. Ct. at 1960.  The Supreme Court concluded that ADA Ceballos had spoken in his official capacity, as "his expressions were made pursuant to his official duties," and thus, he was not speaking as a citizen for First Amendment purposes.  <u>Id.</u> at 1959-60.  It is significant that the Court focused on whether Ceballos "expressions were made pursuant to his official duties" and not just whether the subject matter of Ceballos speech was important.  Indeed, the Supreme Court recognized that the subject matter of Ceballos' speech, "[e]xposing governmental inefficiency and misconduct[,] is a matter of considerable significance." <u>Id.</u> at 1962.  Nevertheless, because his speech was made "pursuant to [his] professional duties" he was not speaking as a citizen for First Amendment purposes and that speech was not entitled to First Amendment protection.  <u>Id.</u>

Defendants respectfully contend that Weintraub's speech in complaining about a student's misconduct in his class, <u>and</u> in objecting to Goodman's alleged failure to take appropriate disciplinary action, are necessarily within Weintraub's official duties to maintain discipline within his classroom.  Indeed, as this Court specifically observed, Weintraub was upset about this situation (both the student's alleged misconduct <u>and</u> Goodman's alleged failure to properly discipline this student), because: "if this child could do this to me, that it would put the danger of [sic] other students at risk ..."  <u>Weintraub v. BOE</u>, 423 F. Supp. 2d 38, 42 (E.D.N.Y. 2006)(quoting plaintiff's deposition testimony).  It cannot be doubted that a teacher has an official duty to protect the safety of his students, <u>and</u> that plaintiff's speech in complaints concerning the student's misconduct and Goodman's failure to properly discipline that student, would necessarily be made pursuant to that official duty.

In opposing this motion, plaintiff observes that the case underlying the <u>Garcetti</u> decision was <u>Pickering</u>, which articulated a two step analysis and established a balancing analysis to be utilized in examining First Amendment speech clams. <u>See</u> Richard Engelberg's May 16, 2007 letter to this Court, at pp. 1-2 (hereinafter "the Engelberg 5/16/07 letter").  Indeed, the <u>Garcetti</u> decision quoted <u>Pickering</u>, as it recounted this two step analysis:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern.  If the answer is no, the employee has no *First Amendment* cause of action based on his or her employer's reaction to the speech.  If the

---

[2]  This issue is of course preserved for appeal.

> answer is yes, then the possibility of a *First Amendment* claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

The second step, of course, concerns the classic "<u>Pickering</u> balancing test," which is referred to in both Justice Stevens and Breyer's dissenting opinions. <u>Id.</u> at 1967 (as Justice Stevens asserts that the Pickering balancing test should still be applied even when the employee speaks pursuant to his official duties, asserting: "Nothing, then, accountable on the individual and public side of the *Pickering* balance changes when an employee speaks 'pursuant' to public duties") and 1975 (as Justice Breyer additionally asserts: "I would apply the *Pickering* balancing test here"). The point, however, is that if the first step is answered "no" then the <u>Pickering</u> balancing test is not applied. In <u>Garcetti</u>, the majority has made clear that the first Pickering "step" has two prongs: (1) if the "employee spoke as a citizen," and, (2) if he did, was it "on a matter of public concern." See <u>Garcetti v. Ceballos</u>, 547 U.S. ___, 126 S. Ct. 1951, 1958 (2006)(quoting, <u>Pickering v Board of Educ.</u>, 391 U.S. 563, 568 (1968)). If the answer to either prong is "no," then "the employee has no *First Amendment* cause of action based on his or her employer's reaction to the speech." <u>Id.</u>

      Plaintiff's opposition to this motion quickly bypasses the first <u>Pickering</u> step and focuses on the second step as plaintiff focuses on whether "plaintiff's speech in any way affected or had the potential to affect the operations of the Board of Education ..." <u>See</u> the Engelberg 5/16/07 letter, at p. 2. However, as noted above, if plaintiff was not speaking as a citizen for First Amendment purposes, then the Pickering balancing test is never applied. Plaintiff's attempts to side-step this issue should be rejected.

      Plaintiff next attempts to distinguish himself from <u>Garcetti</u> by asserting that Weintraub's protected speech was his "complaint ... that his supervisor (Mr. Goodman, the assistant principal) was not taking appropriate action." <u>See</u> the Engelberg 5/16/07 letter, at p. 2. Yet, as observed above, any teacher has an official duty to maintain the safety of his students, and, as this Court recognized, Weintraub acknowledged that his concern was that Goodman's failure to take appropriate disciplinary action would actually endanger his students. For this very reason, he had an official duty to grieve Goodman's failure to act pursuant to the "Agreement between the Board of Education of the City of New York and the United Federation of Teachers" and the circular attached thereto as Appendix B. Indeed, specifically because this grievance concerned the issue of discipline within Weintraub's classroom,[3] the Court should decline to

---

[3] Specifically, because this issue concerns discipline within Weintraub's classroom it is <u>not</u> an issue concerning academic freedom. This case does not concern any academic debate, such as who was the better poet, Shakespeare or Byron. Thus, plaintiff's suggestion that a refusal to have the federal Court become involved in the daily operations of the school and determine whether an assistant principal is somehow retaliating against a teacher simply because the teacher disagreed with how the assistant principal disciplined a particular student who had

Continued...

intercede in this issue given the sound principals of federalism and separation of powers. The <u>Garcetti</u> Court specifically noted such a concern, as it explained that any rule which would permit a Federal Court to intercede in such local issues:

> …would commit state and federal courts to a new, permanent, and intrusive role, mandating judicial oversight of communications between and among government employees and their superiors in the course of official business. This displacement of managerial discretion by judicial supervision finds no support in our precedents. When an employee speaks as a citizen addressing a matter of public concern, the *First Amendment* requires a delicate balancing of the competing interests surrounding the speech and its consequences. When, however, the employee is simply performing his or her job duties, there is no warrant for a similar degree of scrutiny. To hold otherwise would be to demand permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers.

126 S. Ct. at 1961. For these reasons, defendants respectfully seek the dismissal of plaintiff's First Amendment retaliation claim.

## 2) **Defendants' Motion in Limine**

### The Newspaper Articles

Plaintiff argues that the newspaper articles are not submitted to prove the truth of the matter asserted but instead to provide "further evidence of the animus and malice of the defendants by offering the articles as 'evidence' in an arbitration hearing after they knew or should have known that the criminal charges reported in those articles had been dismissed." <u>See</u> the Engelberg 5/16/07 letter, at p. 3. This assertion, however, is uncorroborated by any arbitration decision in this matter. Clearly, these articles were not admitted into "evidence" at any arbitration. Plaintiff's deposition asserts that the Daily News article[4] was presented at a

---

allegedly misbehaved would somehow translate to an issue of "academic freedom" is purely a grasp at straws to avoid the clear import of <u>Garcetti</u>. <u>See</u> the Engelberg 5/14/07 letter, at p. 3.

[4] Even though plaintiff's own deposition testimony confirms that only the Daily News article was even referred to during a grievance, plaintiff nonetheless seeks to introduce a second article, from Newsday. Moreover, the second article is a computer generated printout which contains highly prejudicial search phrases. Accordingly, the Newsday article can have absolutely no relevance.

arbitration concerning a letter in plaintiff's file asserting that he abandoned his class. <u>See</u> Plaintiff's deposition transcript, dated August 30, 2002, at pp. 82-83. Moreover, plaintiff's own deposition testimony establishes that the arbitrator completely ignored the newspaper article. Accordingly, by plaintiff's own testimony as well as the decision itself, the newspaper article was never considered and thus had absolutely no impact of the arbitration decision. <u>See</u> PX-13. Moreover, contrary to plaintiff's assertion, these individual defendants were unaware of the outcome of the charges reported in the Daily News article. Indeed, Goodman's deposition specifically confirms that he was unaware of "the outcome of any proceeding arising out of the allegations or charges made against Mr. Weintraub." <u>See</u> Goodman's deposition transcript, dated October 4, 2002, at pp. 9--92.

### Police Reports

Plaintiff somehow asserts that merely because the police reports are official records that the information therein must be admissible. This argument has been considered and rejected in this Circuit. <u>See</u>, e.g., <u>Parsons v. Honeywell, Inc.</u>, 929 F.2d 901, 907 (2d Cir. 1991)(quoting, <u>United States v. Pazsint</u>, 703 F.2d 420, 424 (9 Cir. 1983))("It is well established that entries in a police report which result from the officer's own observations and knowledge may be admitted but that statements made by third persons under no business duty to report may not."). To whatever degree, Miller's notes have any relevance, as some obligation by defendants Goodman and Serrano to report to the school safety officer, only those notes would be admissible. <u>See</u> PX-29. The police report, with plaintiff's self-serving statement certainly contains no exception to the hearsay rule. See PX-25

### Handwritten Notes

As plaintiff acknowledges, no TAC conference was ever used in this case. Indeed, the evidence establishes that no such conference was warranted as plaintiff was not a tenured teacher. Accordingly, the document, PX-58, should be excluded on FRE 403 grounds, to avoid a confusion of issues.

### The Taped Conversations And The Plaintiff-Prepared Transcripts Thereof

Plaintiff misses the point of defendants' objection as plaintiff attempts to focus on what the tapes purportedly prove. Indeed, it is defendants' position that the tapes are inadmissible hearsay and speculation. Moreover, to whatever degree they might have some slight probative value, that values is far outweighed by the undue prejudice to defendants.

As noted in defendants' prior letter brief, plaintiff has listed each of these individuals, whom he secretly taped, as witnesses at trial. Accordingly, plaintiff is free to question each witness about these conversations and use the tape recordings as possible impeachment, but should be precluded from introducing these misleading, incomplete transcripts. In this way, only admissible evidence is actually presented to the jury.

**Proposed Exhibits and Testimony**
**Concerning Any Withheld Salary**

Plaintiff has failed to oppose defendants' motion to exclude Exhibits and testimony concerning a bookkeeping error in which a direct deposit from the BOE to plaintiff's back account, was inadvertently reversed. As noted in defendants' prior letter brief, this issue was resolved by settlement for which plaintiff executed a release. In light of the settlement, and plaintiff's failure to oppose this aspect of defendants' motion in limine, defendants respectfully seek an order excluding any testimony and/or exhibits related to this issue. The exhibits at issue include:

- PX-71, "statement of undistributed paycheck";

- PX-72, Credit Union statement and letter from O'Reilly, et al.";

- PX-77, Civil Court summons and complaint – Weintraub against Board of Education";

- PX-86, "Letter from Gary N. Weintraub, Esq. to Lawrence Becker, Esq. dated October 7, 1999"; and

- PX-87, Credit Union Statement dated 9-30-99 – withdrawal of payroll".

JPTO, ¶ 9, pp. 17-18. <u>See</u>, Exhibit "G" attached to defendants' prior letter brief.

**Other Hearsay**

Plaintiff again fails to appreciate the requirements of the hearsay rules as he argues that certain documents should be admitted despite the fact that they contain inadmissible hearsay. Plaintiff asserts that the statements attributed to Pat Lee, but apparently made by Ms. Patricia Levinson in PX-79, are somehow admissible simply because they are "part of the official records" of BOE. Again, the fact that the written notation might be part of the BOE's records, does not automatically exclude the statement therein from being hearsay. Moreover, plaintiff further argues that the letter from plaintiff's father, Mr. Gary Weintraub, concerning a purported conversation he had with Mr. Becker (<u>see</u> PX-85), would somehow become admissible as Becker's comments therein would be an admission under F.R.E. 801(d)(2)(D). This analysis, however, fails to note that the letter constitutes multiply hearsay, pursuant to F.R.E. 805: first, the purported statement attributed to Becker, *and second*, by Weintraub himself as he purports to repeat what Becker told him. Indeed, it cannot be questioned that Weintraub's letter constitutes multiple hearsay and there is simply no exception for the second level of hearsay: Weintraub's own written statement.

**Lemonedes to Hon. Glasser**
**Re: <u>Weintraub v. BOE, et al.</u>, 00 Civ 4384 (ILG)**
May 21, 2007; page 7

        Thank you for your kind consideration.

                                    Respectfully submitted,

                                    James M. Lemonedes (JL-8593)
                                    Assistant Corporation Counsel

JML/tim
CC:  Richard A. Engelberg, Esq,
      by e-mail as requested: rengelberg@verizon.net